POWELL, *Plaintiff in Error*, v. ADAMS *et al.*

1. **Fraud:** IMPEACHING COMPROMISE. The owner of land, who had exchanged it for stock in a corporation, claimed that he was defrauded by fraudulent misrepresentations as to its value. Afterwards, when in a position where, by ordinary vigilance, he could have ascertained the value of the stock, he assented to a compromise and executed a release, the consideration therefor being paid to him. *Held:* that, in the absence of fraud impeaching the settlement, he could not assail the validity of the original transfer.

2. **Fraudulent Misrepresentations.** A fraudulent misrepresentation will not furnish ground for equitable relief unless, among other things, it formed a material inducement to the agreement sought to be rescinded.

3. **Practice in Equity Cases:** ADMISSION OF EVIDENCE. It is usually the better practice, in the trial of equity causes by the court, to admit all evidence not clearly inadmissible, even though it is afterwards excluded, in order that any difference of opinion between the trial and the appellate court may not necessitate the delay and expense of a new trial.

*Error to Cole Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

PLAINTIFF was the owner of a certain hotel which he exchanged for stock in an incorporated company. He claims that he was defrauded in the transaction. This suit was brought to rescind his deed and restore him to his antecedent position as owner of the property and for other appropriate relief.

The answer denied the fraud alleged and set up an accord and satisfaction or settlement.

The reply asserted that the settlement was also fraudulently procured.

The cause was tried by Judge EDWARDS and resulted in a finding and decree for defendants which plaintiff seeks to reverse by this writ of error.

The other material facts appear in the opinion.

*N. D. Thurmond* and *Geo. B. Macfarlane* for plaintiff in error.

(1) The new increase of stock was void and had no value, and the compromise of February 27, if it settled anything, only settled the supposed difference between the legal issue of stock and the value of the hotel. Nothing else was in contemplation of the parties, as appears from defendants' own testimony. "The doctrine is firmly rooted in equity that where an instrument is so general in its terms as to release the rights of the party of which he was ignorant, and which were not in contemplation of the bargain at the time it was made, the instrument will be restrained to the purposes of the bargain and the release confined to the right intended to be released." *Blair v. Railroad*, 89 Mo. 383. (2) The item of "longs and shorts" carried on the books of the corporation as assets and showing thereby that the assets of the corporation were about twenty-nine thousand dollars more than liabilities was an act of fraud, and was calculated to, and did, mislead plaintiff. Thompson on Liability of Officers and Agents of Corporations, notes, sec. 3, pp. 489–492. (3) Fraud is a question of evidence. This being an equity case is triable *de novo*. The evidence shows conclusively to our minds that defendant Adams, who acted for himself and other defendants, was privy to the trade. He received from Broadwell the contract of sale on the fifteenth of September, and on the sixteenth had transfer of stock made to Broadwell and had Broadwell's certificate in his possession. When Powell and Crews met Broadwell and offered him Powell's deed he directed them to go to Adams. They went to Adams at the bank and he delivered to

them Broadwell's certificate for one hundred and thirty-five shares already endorsed, and received from Crews Powell's deed.   Deed from Powell to Broadwell was filed for record on September 16, 1884.   Evidently Adams had it filed and got Penn, the clerk, to go and get Broadwell's acknowledgment.   Deed from Broadwell to defendants was not filed for about a year although it was executed on September 16.   These facts are fully substantiated.

*John A. Hockaday* and *Silver & Brown* for defendants in error.

(1)   In equity cases, the appellate court will sustain the finding, unless the court below has manifestly disregarded the evidence.   *Sharp v. McPike*, 62 Mo. 300; *Hodges v. Black*, 76 Mo. 537; *Royle v. Jones*, 78 Mo. 403; *Snell v. Harrison*, 83 Mo. 650; *Mathias v. O'Neill*, 94 Mo. 520.   (2) Where in such cases there is a conflict of evidence affecting the credibility of witnesses, the supreme court will defer largely to the action of the chancellor trying the case.   *Pike v. Martindale*, 91 Mo. 284; *Baum v. Freyrear*, 85 Mo. 151.   (3) The acceptance of money in compromise and settlement of a disputed demand is a complete bar to any action upon such demand, and the acceptance of six hundred and seventy-five dollars by plaintiff in compromise and adjustment of the pending action constitutes a complete bar to his successful prosecution of the same, no fraud or deception having been practiced upon him.   *Railroad v. Allen*, 46 Ark. 217; *Tullew v. Crittenden*, 9 Conn. 401; *Reiley v. Chouquette*, 18 Mo. 220; 1 Story's Eq. [7 Ed.] sec. 131; *Mullanphy v. Riley*, 10 Mo. 489; *Cooper v. Parker*, 14 C. B. 118, 822; *Palmerton v. Huxford*, 4 Denio, 166; *Bryant v. Proctor*, 14 B. Monroe, 451; *Donahue v. Woodbury*, 6 Cush. 148; *Tuttle v. Tuttle*, 12 Met. 551; *Livingston v.*

*Dugan*, 20 Mo. 102; *Zimmer v. Becker*, 66 Wis. 527. (4) Fraud cannot be presumed. It must be proved, and the proof must be clear and convincing. *Priest v. Way*, 87 Mo. 16; *Allison v. Ward*, 29 N. W. Rep. (Mich.) 528; *Wickham v. Morehouse*, 16 Fed. Rep. 324; *Clemens v. Brillhart*, 17 Neb. 335; *Dunn v. White*, 63 Mo. 181; *Bailey v. Smock*, 61 Mo. 213; *Campan v. Lafferty*, 50 Mich. 114; *Le Saulnier v. Loew*, 53 Wis. 207.

BARCLAY, J.—The facts developed at the trial are somewhat complicated but the decisive point of the controversy is not obscure.

Plaintiff parted with his hotel in exchange for stock in a tobacco company in September, 1884. During the next month he brought an action against the defendants here and others, charging that the exchange was induced by false and fraudulent representations to him regarding the value of the stock and claiming eighty-one hundred dollars damages. In November following he dismissed his action for deceit and executed a paper withdrawing all the charges of fraud. Afterwards he complained to some of defendants that the stock was not as good as had been represented and that something ought to be done about it.

Negotiations then followed, terminating in February, 1885, with a formal release in which, after reciting most of the foregoing facts, it was declared that the trade was fairly made but that plaintiff was dissatisfied in that he did not "think he got the full value of his property in tobacco stock." The document then proceeds as follows:

"Now, therefore, the said parties have this day paid to the said Powell the additional sum of six hundred and seventy-five dollars for said Powell House for the purpose of satisfying said Powell, the receipt of which sum the said Powell hereby acknowledges and says and admits that he is now fully satisfied with said

trade, and that he accepts said sum of money with the promise on his part and a full understanding, that he is to treat the same as a full, complete and perpetual settlement of the same for all time to come and that he will not again express any dissatisfaction on account thereof to said parties or to others, or again call on or solicit for any other or further concession on their part," etc.

Plaintiff signed this instrument, delivered it to the defendants and accepted the six hundred and seventy-five dollars mentioned in it. Prior to this settlement plaintiff had been elected a director of the company and had unlimited access to its factory and to all its records and books of account. His son, who lived in Texas, had come, at his request, to confer with him regarding his affairs, and advised him in relation to the withdrawal of the first action mentioned.

The company failed and ceased business in 1886, after which this suit was brought.

These facts all appear from the plaintiff's own witnesses.

One statement let fall by himself at the trial deserves mention as bearing on the conclusiveness of the settlement in February, 1885. It was this:

"After the first paper was signed I was about the factory a good deal and asked the bookkeeper to give me a true statement; that the parties wanted money and if I could be satisfied that the concern was prospering I might put some money in it. He told me he was not allowed to make a true statement, and, if he did so, and made it to me he would lose his position. The only statement I saw was one laid on the counter when other parties were present. I cannot tell what the difference between the assets and liabilities then was; all I could get from the bookkeeper in explanation of 'longs and shorts' was that it was an overestimate; he didn't tell me it was a loss; he said they had overestimated what they had. It was that much

deficient. I saw the company owed a good deal; Dr. Nesbit said the item of about twenty-seven thousand dollars 'long and short' was there when he was there; he didn't say it was a loss. I understood Blake, the bookkeeper, to say it was an overestimate."

This outline of the relative positions of the parties before the court is sufficient to show the obstacle that confronts plaintiff. He must first get rid of his last formal settlement with defendants before any investigation of antecedent equities can properly be had. He has kept the consideration then paid him, though offering in his reply " to account to the defendants therefor by deducting the same, with interest, from the rents which the court may find the defendants owe plaintiff for the use and occupation of the said hotel property since the sixteenth day of September, 1884, or in any other manner which to the court may seem equitable and proper."

We lay aside all question of the sufficiency of this offer in the premises, and consider the merits of plaintiff's effort to rescind this settlement. It is based mainly on the same grounds that formed his objection to the original transaction, namely : That he was led into it by fraudulent misrepresentations touching the value of the stock. He also claims that he misunderstood the meaning of the entry " longs and shorts" in the company's books, supposing it represented an asset, whereas it expressed "profit and loss," and, as entered, in fact, indicated a loss. This he did not learn until later, being ignorant of bookkeeping.

But plaintiff's attitude toward the subject-matter of his agreements with defendants and toward them was very different at the time of the last settlement from what it was when the original exchange was made. When he executed the release he was in a position where, by ordinary business vigilance, he could readily have known the exact condition of the company's affairs

He was a director in it, and had full liberty of access to its books. He had charged fraud upon defendants in his first dealings with them and afterwards withdrawn the charge. He certainly was in a situation where common prudence demanded that any contracts with them, in relation to that subject, should be made at arm's length. No fraud in respect to the formal execution or delivery of the instrument of settlement is claimed. The alleged fraud is collateral merely. The burden of proof is upon him to show it. He has entirely failed.

Fraudulent misrepresentation does not furnish ground for equitable relief unless (among other things) it formed a material inducement, at least, to the agreement sought to be rescinded. In the present instance no satisfactory showing has been made that the settlement was induced by any such misrepresentation. Plaintiff appears to have been the first mover in bringing it about and there was abundant evidence from which the trial court could properly find that he then had full notice of the condition of the company and hence of the true value of the stock. He was evidently conscious of having the means of knowledge on those subjects and the court could properly have found that he relied on them rather than on anything said by defendants in the peculiar circumstances of the case. We think such findings proper deductions from the facts.

We consider the compromise agreement, therefore, a complete defense to plaintiff's claim.

We have not found it necessary to examine the equities of the original transfer of the hotel property by plaintiff. The settlement acknowledges its good faith, and, in the view we take of the latter document, it is unnecessary to go further.

It is also immaterial whether the exclusion of the testimony of witness Penn was correct or not.

That offer related to the first dealings between the parties, long before the settlement, and had no relevancy to the latter subject.

It may be remarked that, in the trial of such causes by the court, it is usually the better practice to admit all evidence not clearly inadmissible, even though the court may afterwards exclude it, to the end that any difference of opinion, between the trial and appellate courts regarding it, may not necessitate the delay and expense of a new trial.

We are satisfied in the present case that the circuit court correctly found for defendant. Its decree is affirmed with the assent of BLACK and BRACE, JJ.; RAY, C. J., absent, and SHERWOOD, J., expressing no opinion.